No. 21-56039

# In the United States Court of Appeals
## for the Ninth Circuit

RUSSELL FOUTS AND TAN MIGUEL TOLENTINO

*Plaintiffs-Appellants*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,

*Defendant-Appellee*.

**Appeal from a Judgment of United States District Court
For the Southern District of California
Civ. No. 3:19-cv-01662-BEN-JLB
United States District Court Judge Roger T. Benitez**

## Appellants' Reply Brief

ALAN ALEXANDER BECK
2692 Harcourt Drive
San Diego, California 92123
Telephone: (619) 905-9105
alan.alexander.beck@gmail.com

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. Box 428
Olive Branch, MS 38654
Telephone: (601) 852-3440
stephen@sdslaw.us

*Attorneys for Appellants Russell Fouts and Tan Miguel Tolentino*

## CONTENTS

INTRODUCTION ....................................................................................1

ARGUMENT ..........................................................................................2

I.    Clubs, Similar to Billies, Were Used as Arms During the Founding Era ........2

II.    Plaintiffs Have Properly Raised an As-Applied Challenge ...........................7

III.    California's Ban is Not Longstanding................................................8

IV.    The Plaintiffs Rebutted Any Presumption.......................................10

V.    Batons Are Commonly Used for Lawful Purposes .......................................14

  A.  This Court Should Apply a Categorical Approach .......................................18

  B.  Strict Scrutiny Should Apply...........................................................20

  C.  California's Baton Ban Fails Intermediate Scrutiny .....................................23

  D.  This Court Should Be Guided by the Oregon and Connecticut Opinions .....26

CONCLUSION .....................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Avitabile v. Beach*, 368 F. Supp. 3d 404 (N.D.N.Y. 2019) ........................ 14, 18, 26

*Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009)..........................................23

*Caetano v. Massachusetts*, 577 U.S. 411, 136 S. Ct. 1027 (2016).................. passim

*Citizens United v. FEC*, 558 U.S. 310 (2010)............................................................7

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...................................... passim

*Duncan v. Bonta*, No. 19-55376, 2021 U.S. App. LEXIS 35256 (9th Cir. Nov. 30, 2021) ......................................................................................................................20

*Fouts v. Bonta*, No. 19-cv-1662-BEN (JLB), 2021 U.S. Dist. LEXIS 181260 (S.D. Cal. Sep. 22, 2021)................................................................................................15

*Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015) ........................16

*Heller v. District of Columbia*, 399 U.S. App. D.C. 314, 670 F.3d 1244 (2011).. 11, 13

*Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016) .........................................................17

*Jackson v. City & Cty. of S.F.*, 746 F.3d 953 (9th Cir. 2014)...................... 8, 10, 23

*Mai v. United States*, 952 F.3d 1106 (9th Cir. 2020)...............................................24

*Maloney v. Singas*, 351 F. Supp. 3d 222 (E.D.N.Y. 2018)......................................26

*McDougall v. Cty. of Ventura*, No. 20-56220, 2022 U.S. App. LEXIS 1634 (9th Cir. Jan. 20, 2022)............................................................................ 21, 22, 23, 24

*Padilla-Ramirez v. Bible*, 882 F.3d 826 (9th Cir. 2017).........................................28

*Pena v. Lindley*, 898 F.3d 969 (9th Cir. 2018) .......................................................11

*People v. Collins*, 6 Ill. App. 3d 616, 286 N.E.2d 117 (1972) ...............................16

*People v. Davis*, 214 Cal. App. 4th 1322..................................................... 18, 25

*People v. Grubb*, 63 Cal. 2d 614 (1965)................................................................12

*Peruta v. Cty. of San Diego*, 824 F.3d 919 (9th Cir. 2016) ......................................9

*Renna v. Becerra*, No. 20-cv-2190-DMS-DEB, 2021 U.S. Dist. LEXIS 78634
 (S.D. Cal. Apr. 23, 2021) .......................................................................11

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016) ................................. 12, 20

*State v. DeCiccio*, 315 Conn. 79, 105 A.3d 165 (2014) .................................. 26, 27

*State v. Delgado*, 298 Or. 395, 692 P.2d 610 (1984) .....................................6

*State v. Herrmann*, 2015 WI App 97, 366 Wis. 2d 312, 873 N.W.2d 257 ....... 14, 25

*State v. Kessler*, 289 Or. 359, 614 P.2d 94 (1980) ..................................... 5, 27, 28

*Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) ...............................9

*Teter v. Connors,* 460 F. Supp. 3d 989 (D. Haw. 2020) ...........................................19

*Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707 (1981) ...........22

*Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021) ...................................................8, 12

## Statutes

720 Ill. Comp. Stat. Ann. 5/24-1 .......................................................................16

Metropolitan Police Act 1829 (10 Geo.4, c.44) ..........................................................3

Penal Code section 22210 ……………………………………………………....………15, 18

Statute of Winchester of 1285 (13 Edw. I, St. 2) .......................................................3

## Other Authorities

2 The Writings of Samuel Adams 119 (1904) ...........................................................5

Archibald MacGregor's Lecture upon the Art of Defence (1791) ...........................4

Brief Instructions on my Paradoxes of Defence (c.1605 ) .........................................3

Cotton Titus Ms. (British Museum, MS Titus A. xxv, f. 105) .................................4

Donald MacBane's The Expert Swordsman's Companion (1728) ...........................4

Frederick MacKenzie, A BRITISH FUSILIER IN REVOLUTIONARY BOSTON
 37 (Allen French ed., 1926) ...................................................................................5

George Silver's Paradoxes of Defence (1599) ...........................................................3

Joseph Swetnam's The Schoole of the Noble and Worthy Science of Defence
(1617) ................................................................................................................ 3

O. Hogg, Clubs to Cannon 19 (1968) ................................................................. 2

R. G. Allanson-Winn and C. Phillipps-Wolley Broadsword and Singlestick with
chapters on Quarterstaff, Bayonet, Shillalah, Walking-Stick, Umbrella and Other
Weapons of Self Defence (1890) ...................................................................... 4

Speidel, Michael (1993), The fustis as a soldier's weapon. Antiquités africaines. 29.
137-149. 10.3406/antaf.1993.1216 .................................................................. 2

Stephen P. Halbrook, The Founders' Second Amendment 25 (2008) .................. 5

Thomas McCarthy's Quarter-staff: a practical manual (1883) ............................ 4

W. Moore, *Weapons of the American Revolution*, 8 (1967) ................................ 5

Zachary Wylde's The English Master of Defence (1711) .................................... 4

iv

# INTRODUCTION

California's Answering Brief makes no effort to dispute Plaintiffs' presentation of precedent which dictates that a law must be from the Founding Era in order to be longstanding. California's ban on batons[1] is from the early 20th Century. Therefore, the laws at issue in this litigation are not longstanding.[2]  And it has not attempted to rebut the presumption that batons are protected arms. Therefore, this Court should find that batons are protected arms. California law operates as a complete ban on a protected class of arms. This Court should find the ban unconstitutional without the need to apply a level of scrutiny.  However, as shown below, under any applicable level of scrutiny, California law is unconstitutional.

---

[1] While the statute refers to the arm at issue as billies, Plaintiffs will continue to refer to them as batons as they did in the Opening Brief.

[2] The State appears to have abandoned its trial court argument that batons are not protected arms by the Second Amendment because they are "dangerous and unusual" weapons. While California does make a passing reference in a footnote to batons being dangerous, it makes no argument that batons are "dangerous and unusual" weapons.  "[T]his is a conjunctive test: A weapon may not be banned unless it is *both* dangerous *and* unusual." *Caetano v. Massachusetts*, 577 U.S. 411, 417, 136 S. Ct. 1027, 1031 (2016) (Alito, Concurring).  An arm cannot be banned simply because it is dangerous.  Especially if it is less deadly than the handgun at issue in *Heller.*  "If *Heller* tells us anything, it is that firearms cannot be categorically prohibited just because they are dangerous. 554 U.S., at 636, 128 S. Ct. 2783, 171 L. Ed. 2d 637. *A fortiori*, stun guns that the Commonwealth's own witness described as "non-lethal force," [] cannot be banned on that basis." *Id.* at 418. Therefore, this Court should find that California has waived this argument.

**ARGUMENT**

## I.  Clubs, Similar to Billies, Were Used as Arms During the Founding Era

There have been sticks shaped like batons all throughout human history. The club is considered the first personal weapon fashioned by humans. O. Hogg, Clubs to Cannon 19 (1968). Batons were issued to Roman officers and this tradition continued throughout European history.[3,4]

The police baton can trace its origins to the 27BC Roman Empire during the reign of Augustus (Gaius Octavious – Great nephew to Julius Caesar). During this era, the first non-military civilian police force was formed known as the "Vigiles Urbani" (Watchmen of the City), or "Cohortes Vigilum" (Cohorts of the Watchmen). They were typically armed with the fustis which was a type of club similar to the traditional policeman baton. *See* Speidel, Michael (1993), The fustis as a soldier's weapon. Antiquités africaines. 29. 137-149. 10.3406/antaf.1993.1216.[5]

Modern day policing, and with it the use of the baton, has its origins in the Assize of Arms of 1181, a proclamation of King Henry II of England, concerning

---

[3] Available at https://bit.ly/3oy4hwR (The first use of a baton to symbolize military power was by the Roman Legate, who wielded a white baton to represent his ultimate authority).

[4] Available at https://bit.ly/34jc8rg.

[5] Available at https://bit.ly/3GxQwUU.

the obligation of all freemen of England to possess and bear arms in the service of King. The Assize of Arms of 1252 was a proclamation of King Henry III of England concerning the enforcement of the Assize of Arms of 1181, and the appointment of constables to summon men to arms, quell breaches of the peace, and to deliver offenders to the sheriff. The Statute of Winchester of 1285 (13 Edw. I, St. 2) reformed the system of Watch and Ward (watchmen) of the Assize of Arms of 1252, and revived the jurisdiction of the local courts. This "Watch and Ward" system of law enforcement remained in effect until the formation of the modern police with the passage of the Metropolitan Police Act 1829 (10 Geo.4, c.44).[6] Citizens were expected to provide their own weapons when assisting law enforcement. This included clubs and other precursors to the modern baton due to stick fighting's prevalence in Common Law era England.

The English Common Law, from which our Second Amendment is derived, has a rich history of stick fighting. The English method of staff combat was recorded in several fencing manuals. The primary ones are George Silver's Paradoxes of Defence (1599)[7], Brief Instructions on my Paradoxes of Defence (c.1605 ), Joseph Swetnam's The Schoole of the Noble and Worthy Science of Defence (1617)[8] and

---

[6] Available at https://bit.ly/3LeozFb.

[7] Available at https://bit.ly/3GwZ52s.

[8] Available at https://bit.ly/3HB4Cq3.

Zachary Wylde's The English Master of Defence (1711),[9] with Donald MacBane's The Expert Swordsman's Companion (1728)[10] and Archibald MacGregor's Lecture upon the Art of Defence (1791)[11] providing some additional information. Even earlier is the Cotton Titus Ms. (British Museum, MS Titus A. xxv, f. 105)[12] from the late 15th century, which comes in two parts, the "Strokez off ij hand swerde" and "Strokes atte þe ij hande staffe". In addition, there are several later sporting staff manuals, including Thomas McCarthy's Quarter-staff: a practical manual (1883),[13] R. G. Allanson-Winn and C. Phillipps-Wolley Broadsword and Singlestick with chapters on Quarterstaff, Bayonet, Shillalah, Walking-Stick, Umbrella and Other Weapons of Self Defence (1890).[14]

The use of clubs continued during the Founding Era in America. On the annual commemoration of the Boston Massacre in 1772, Bostonians attended Dr. Joseph Warren's stirring oration. Expecting the speech to upset the Redcoats in attendance, "almost every man [in the audience] had a short stick, or bludgeon, in his hand; and

---

[9] Available at https://bit.ly/3uxT0jR.

[10] Available at https://bit.ly/3B6Ls8N.

[11] Available at https://bit.ly/3LiXu3S.

[12] Available at https://bit.ly/34oBPqf.

[13] Available at https://bit.ly/3LcqYjX.

[14] Available at https://bit.ly/3rtQhWK.

. . . many of them were privately armed." Frederick MacKenzie, A BRITISH FUSILIER IN REVOLUTIONARY BOSTON 37 (Allen French ed., 1926). "The colonists suffered a severe shortage of firearms in the early years of the war, so many soldiers had to rely primarily on swords, hatchets, knives, and pikes (long staffs with a spear head). W. Moore, *Weapons of the American Revolution*, 8 (1967)." *State v. Kessler*, 289 Or. 359, 368, 614 P.2d 94, 98 (1980). And as Samuel Adams observed, "[i]t may be supposed that he had as good right, by the law of the land, to carry a stick for his own and his neighbor's defence, in a time of danger, as the Soldier who shot him had, to be arm'd with musquet and ball, for the defence of himself and his friend the Centinel." Stephen P. Halbrook, The Founders' Second Amendment 25 (2008) (quoting 2 The Writings of Samuel Adams 119 (1904).

Plaintiffs dispute California's contention that law enforcement began in the mid-1800s. In what would be known as New York, during its Dutch era from 1625 to 1664, the first professional police department was created in New Amsterdam. Police officers used hand rattles (the precursor to the modern police whistle) as they patrolled the streets to discourage crime and apprehend criminals.[15,16] Under British rule from 1664 to 1783, constables were charged with keeping the peace. They focused on such offenses as excessive drinking, gambling, prostitution, and church

---

[15] Available at https://washex.am/3J942jI.

[16] Available at https://bit.ly/3JcIF0C.

service disturbances.[17] And in the 1630s, Boston formed a watch that consisted of one constable and six watchman.[18,19]   Prior to 1854 they were issued billhooks.[20] In 1854, Boston officers began to carry a 14-inch club.  This demonstrates that club and staff-like weapons have a rich history going back to colonial America and earlier.

The fact that modern day clubs may or may not be carved slightly different than those of the Founding Era is irrelevant to determining constitutional protection. The Oregon Supreme Court already rejected the position that minor changes in a weapon defeat its constitutional protection:

> We are unconvinced by the state's argument that the switch-blade is so "substantially different from its historical antecedent" (the jackknife) that it could not have been within the contemplation of the constitutional drafters. They must have been aware that technological changes were occurring in weaponry as in tools generally… This was the period of development of the Gatling gun, breach loading rifles, metallic cartridges and repeating rifles. The addition of a spring to open the blade of a jackknife is hardly a more astonishing innovation than those just mentioned.

*State v. Delgado*, 298 Or. 395, 403, 692 P.2d 610, 614 (1984).

---

[17] Available at https://bit.ly/3ow0LTB.

[18] Available at https://bit.ly/3ov4Wz6.

[19] Available at https://bit.ly/3Jd2LIu (page 10).

[20] Available at https://bit.ly/3L9r0ZE.

Similarly, modern day batons are not substantially different from colonial era clubs. In many cases, they are just carved pieces of wood, and even when they are not, those differences do not make them so "substantially different from its historical antecedent" "that it could not have been within the contemplation of the constitutional drafters." Batons are the modern-day descendants to colonial clubs, but even if they were not, the Second Amendment protects modern weapons. *See Caetano v. Massachusetts*, 577 U.S. 411, 136 S. Ct. 1027 (2016). And Plaintiffs have properly raised both an as applied and a facial challenge California's ban on them.

## II.    Plaintiffs Have Properly Raised an As-Applied Challenge

California argues Plaintiffs' claims are "properly characterized as only facial in scope" without support. The Supreme Court has stated that "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge. The distinction … goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010).  The Court, depending on how it distinguishes the as-applied or facial challenge, can craft the remedy it desires to give the proper relief to Plaintiffs.  In any event, Plaintiffs plainly made both a facial and as-applied challenge and sought a remedy that specifically challenges California's baton ban. ER-80 81, 82 83 (Compl.) ¶¶ 47, 59, 76 85.

Defendant's argument also runs contrary to circuit precedent. In *Jackson v. City and County of San Francisco*, this Court ruled on an as-applied Second Amendment challenge to San Francisco's ban on the sale of hollow point ammunition and a requirement that handguns be locked when not in use. Just like the Plaintiffs here, they submitted declarations stating that they wished to engage in the prohibited conduct and sought an injunction against the relevant laws both facially and as applied to them.[21]

This Court ruled on the Jackson Plaintiffs' as-applied challenge. "We begin by addressing Jackson's facial and as-applied challenge to the constitutionality of section 4512." *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 961 (9th Cir. 2014). This Court's precedent allows for Plaintiffs' as-applied challenge.

### III.   California's Ban is Not Longstanding

The *Heller* Court emphasized that the scope of the current Second Amendment right is determined by the scope of the right during the Founding Era. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008); *see also Young v. Hawaii*, 992 F.3d 765, 783 (9th Cir. 2021) (quoting *Heller* at 625) ("Courts must look at the historical understanding of the scope of the

---

[21] *See* Answering Brief of Defendant-Appellee, *Jackson v. San Francisco* 17-803 at p. 45.

right."); *accord Teixeira v. County of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017). California fails to grapple with this Court's precedent that a law must have a Founding Era analog in order to be longstanding. California's core argument appears to be that batons did not exist in 1791, therefore it would be impossible for the Founders to have banned them.

That is an implicit concession that bans on batons are not longstanding pursuant to this Circuit's precedent. This is especially the case with collapsible batons that were invented in the 1970s. A ban on a modern invention cannot be longstanding. Rather than grapple with this point, California tries to argue that its twentieth century law is longstanding. And it then bootstraps California's law on possession to older laws banning the carry of batons and focuses on concealed carry of batons dating back to 1866. However, five out of the six laws identified by California only banned the <u>concealed carrying</u> of batons, not possession or open carry. In other words, those laws banned carry in a manner held by this Court to be historically prohibited. "Concealed weapons were not 'allowed by law,'" *Peruta v. Cty. of San Diego*, 824 F.3d 919, 939 (9th Cir. 2016). California could only cite to one 19th century law which prohibited the carry of batons.

Both the Supreme Court in *Heller* and this Circuit have already rejected the proposition that one jurisdiction can be the basis for a law to be longstanding. "*Heller* also concluded that the Massachusetts law was an outlier that contradicted 'the

overwhelming weight of other evidence regarding the right to keep and bear arms for defense of the home.'" *Jackson*, 746 F.3d at 963. California then tries to link those laws to laws even more attenuated from the ban at issue, and cites to colonial laws on other types of weapons. However, this type of attenuated longstanding analysis has already been rejected in this circuit:

> The fact that states historically imposed modest restrictions on the storage of gunpowder, a dangerous and highly flammable substance, does not raise the inference that the Second Amendment is inapplicable to regulations imposing restrictions on the storage of handguns.

*Id*.

In this Circuit, precedent requires a direct colonial analog to a current law for a longstanding analysis. Laws about other weapons are insufficient just like other types of historical storage requirements do not make gun storage requirements longstanding. California's baton ban is not longstanding. It is a modern policy choice. However, even if this Court finds that California's ban is presumptively lawful, Plaintiffs have rebutted that presumption.

### IV.  The Plaintiffs Rebutted Any Presumption

California claims that longstanding laws create an irrefutable presumption of constitutionality pursuant to the Supreme Court's decision in *Heller*. "Here, any presumption would be rendered irrefutable by the Supreme Court's express assurance that should not 'be taken to cast doubt on longstanding prohibitions.' 554 U.S. at 626. A rebuttable presumption would invariably 'cast doubt' upon the

constitutionality of a longstanding prohibition." Answering Brief at 38, fn 19. That position is not supported by any authority and has been defeated by several courts.

As the U.S. Court of Appeals for the D.C. Circuit stated, *"Heller* tells us 'longstanding' regulations are 'presumptively lawful,' [] that is, they are presumed not to burden conduct within the scope of the Second Amendment…A plaintiff may rebut this presumption by showing the regulation does have more than a de minimis effect upon his right." *Heller v. District of Columbia*, 399 U.S. App. D.C. 314, 323, 670 F.3d 1244, 1253 (2011). Judge Bybee adopted this analysis in his partial concurrence and dissent in *Pena.* "We should apply the presumption of lawfulness to a longstanding regulation of commercial sales of arms. The plaintiff would be able to 'rebut this presumption by showing the regulation does have more than a de minimis effect upon his [Second Amendment] right.' *Heller II*, 670 F.3d at 1253." *Pena v. Lindley*, 898 F.3d 969, 1010 (9th Cir. 2018) (Bybee, J., concurring in part and dissenting in part).

This approach was adopted by the Southern District of California. "The Court thus adopts Judge Bybee's analysis, which follows the approach taken by the D.C." *Renna v. Becerra*, No. 20-cv-2190-DMS-DEB, 2021 U.S. Dist. LEXIS 78634, at *14-15 (S.D. Cal. Apr. 23, 2021). Therefore, the D.C. Circuit's approach is one that is gaining acceptance and no court has adopted California's.

California further supports its argument with a selective quotation from this Court's en banc opinion in *Young v Hawaii. Young* quotes *Silvester v. Harris*, 843 F.3d 816, 818 (9th Cir. 2016) to discuss longstanding laws. The full sentence quoted reads:

> Laws restricting conduct that can be traced to the founding era and are historically understood to fall outside of the Second Amendment's scope may be upheld without further analysis.

*Young v. Hawaii*, 992 F.3d 765, 783 (9th Cir. 2021) (quoting *Silvester*, 843 F.3d at 821).

Therefore, this Court was endorsing the position that a longstanding law is one that is from the colonial era. Laws of more recent vintage are not longstanding. Rather than support California's position, Circuit precedent defeats the very foundation that California's 1917 ban is longstanding.

If this Court finds that California's baton ban is longstanding, and thus presumptively lawful, it should follow the D.C. Circuit and find that this presumption can and has been rebutted. This is because its ban on batons is a severe infringement on Plaintiffs' Second Amendment rights. California makes it a crime to possess any bludgeon for self-defense. *People v. Grubb*, 63 Cal. 2d 614, 621 (1965), superseded on other grounds by statute. And Plaintiffs cannot own their preferred bludgeon, i.e. a policeman's baton, under any circumstances. A complete ban on a protected arm is much more than a de minimis infringement.

California claims that a complete ban on an arm can somehow be a de minimis burden simply because other arms are available. This position was rejected in *Heller*. *Heller,* 554 U.S. at 629 (flatly rejecting as "no answer" the District of Columbia's attempt to justify its handgun ban with the argument that the District had not also banned residents from possessing long guns). And in *Heller II*, the D.C. Circuit already found lessor restrictions on long arms to be more than de minimis. "*[A]ll* the requirements as applied to long guns, also affect the Second Amendment right because they are not de minimis." *Heller*, 399 U.S. App. D.C. at 325-26.

Importantly, the Court did not analyze whether other arms were available. It simply looked at the restriction on the arm which was before it to determine the level of burden. There, without regard for whether other arms were available, it found a training requirement on a long arm was not a de minimis burden. If a training requirement on a protected arm is not de minimis, it follows that a complete ban on another arm must be as well. Here, the facts speak for themselves. A complete ban is a burden on the right to self-defense. Demonstrating that there is a ban in place is enough to rebut any presumption. "The fact that other weapons exist in the world, and that those weapons might conceivably be used for self-defense, does not shield the State's blanket ban on these constitutionally protected arms from at least some measure of heightened scrutiny. *Heller*, 554 U.S. at 629 ('It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the

possession of other firearms (*i.e.*, long guns) is allowed.'); *Caetano*, 136 S. Ct. at 1033 (Alito, J., concurring) ('[T]he right to bear other weapons is 'no answer' to a ban on the possession of protected arms.').'" *Avitabile v. Beach*, 368 F. Supp. 3d 404, 416-17 (N.D.N.Y. 2019).

In this regard, California law is analogous to the switchblade ban struck by the Wisconsin Court. There, the Court found Wisconsin's complete ban on switchblades a significant burden on the litigant's right despite other knives being available for him to own. "In addition, we observe that the State's total ban on the possession of switchblades significantly burdens Herrmann's right to bear arms…Here, the effect of Wis. Stat. § 941.24(1) is to prohibit Herrmann from using an entire class of arms protected by the Second Amendment in his own home for his protection. This significantly restricts Herrmann's core Second Amendment right to bear arms in self-defense." *State v. Herrmann*, 2015 WI App 97, ¶14, 366 Wis. 2d 312, 321-22, 873 N.W.2d 257, 261. The same applies here. Even if California law is longstanding, Plaintiffs have rebutted any presumption of constitutionality. And for the reasons shown below and in the Opening Brief, batons are protected arms and California's ban on them implicate the Second Amendment.

## V.    <u>Batons Are Commonly Used for Lawful Purposes</u>

Pursuant to *Heller*, there is a presumption that all bearable arms receive Second Amendment protection.  The Supreme Court "has held that 'the Second

14

Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding.'" *Caetano*, 577 U.S. at 416 (Alito, J., concurring) (quotation omitted).

Plaintiffs raised this argument in both the trial court and in their Opening Brief. *See* Opening Brief at 8, 23. And this statement of law was endorsed by the trial court. "Because the government bears the burden, these arms are presumptively lawful to own." *Fouts v. Bonta*, No. 19-cv-1662-BEN (JLB), 2021 U.S. Dist. LEXIS 181260, at *9 n.8 (S.D. Cal. Sep. 22, 2021). Despite this, California does not dispute this argument in its answering brief.[22] Nor have they made any effort to rebut this presumption in either the trial court or in their Answering Brief. Rather, California openly acknowledges that it "is aware of no evidence quantifying the number of billies, batons, and other instruments that would qualify as a billy under California Penal Code section 22210 in lawful possession by civilians in the United States", Answering Brief at 42.

California sidesteps precedent and Plaintiffs' position by attempting to place the onus on Plaintiffs to prove batons are typically used for lawful purposes. That simply is not the law. Other than that, California's core argument appears to be that four populous states ban the ownership of batons. "Yet it would be absurd to say

---

[22] The State does not even cite to *Caetano* at all in its Answering Brief, choosing instead to completely ignore the most recent Supreme Court case on non-firearm-but-still-arms ownership.

that the reason why a particular weapon can be banned is that there is a statute banning that it, so that it isn't commonly owned. A law's existence can't be the source of its own constitutional validity." *Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015).

The state opines that the total of four states do not "account for the numerous additional states that impose varying restrictions on the use of billies, including police batons, or restrict police batons as other types of weapons, such as Illinois' prohibition on the possession of a 'bludgeon'". Answering Brief at 43 (footnote omitted). The other states' restrictions primarily deal with the carry of batons and is irrelevant to evaluating a law which bans the mere possession of batons, even in the home. Furthermore, other states like Illinois, do not ban the possession of batons in the home. The Illinois law cited to "seeks to prevent carrying of concealed weapons and thus prevent their use for criminal purposes" and is not a literal ban on the ownership of any blunt object. *People v. Collins*, 6 Ill. App. 3d 616, 619, 286 N.E.2d 117, 119 (1972).

This is further bolstered by Illinois law making it a crime when one "[c]arries or possesses with intent to use the same unlawfully against another, a dagger, dirk, billy, dangerous knife, razor, stiletto, broken bottle or other piece of glass, stun gun or taser or any other dangerous or deadly weapon or instrument of like character;" 720 Ill. Comp. Stat. Ann. 5/24-1. There would be no need to make the use a billy in an unlawful manner a crime if the same statute made it a crime to merely possess one.

16

Batons are legal to possess in 46 states. There is an inference from this fact along with their popularity among law enforcement, civilians commonly possess them for lawful self-defense.[23] This is because the civilian market tends to follow what is popular among law enforcement. If California had wished to rebut any of these propositions, it could have tried to. California makes much to do about the fact no trade group issues numbers on how many batons are sold in this country. That alone is meaningless. Plaintiffs are unaware of any numbers showing how many knives were sold last year, but that does not mean that knives are not commonly sold in this country.

Strikingly, one thing California did not do is submit crime statistics showing that batons have a high frequency of use in crime. Rather they concede "weapons regulated under the 1917 law are not used as prominently in crime today". Answering Brief at 41. Later on in the brief, California cites to a handful of isolated,

---

[23] In addressing whether stun guns are in common use, Justice Alito, joined by Justice Thomas, implied that the number of states that allow or bar a particular weapon is important: "[T]he number of Tasers and stun guns is dwarfed by the number of firearms. This observation may be true, but it is beside the point. . . . The more relevant statistic is that [200,000] . . . stun guns have been sold to private citizens, who it appears may lawfully possess them in 45 States. . . . While less popular than handguns, stun guns are widely owned and accepted as a legitimate means of self-defense across the country." *Caetano*, 136 S. Ct. at 1032-33 (citations and quotation marks omitted). These two justices suggested that the 200,000 absolute number, plus that 45 states have "accepted [stun guns] as a legitimate means of self-defense," was enough to determine that the stun gun is in common use. *Hollis v. Lynch*, 827 F.3d 436, 449 (5th Cir. 2016).

albeit high profile, cases of baton usage during riots. California makes no suggestion that this is the typical use of batons, instead simply citing to a handful of outlier incidents where criminals happened to use batons.[24] Assuredly, the criminals also drove somewhere to commit their crimes, but it doesn't not mean the typical use of cars is in the furtherance of criminal activity. "[T]he State [] ultimately bears the burden of rebutting the prima facie presumption of Second Amendment protection that extends to all bearable arms." *Avitabile,* 368 F. Supp. 3d at 412 (punctuation and citations omitted).

California has failed to rebut the presumption that batons are commonly possessed for lawful purposes. Therefore, precedent dictates this Court must find batons are protected by the Second Amendment.

### A. This Court Should Apply a Categorical Approach

California employs a class-wide ban on all club-like arms. Penal Code section 22210's restrictions on billies applies to any club-like object if it is being possessed for a "dangerous" purpose such as self-defense. *People v. Davis*, 214 Cal. App. 4th

---

[24] And in two of the examples provided, it appears that the defendants took the batons from law enforcement. Answering Brief at 53-54 ("defendant stole a police baton from an officer"; "evidence showed the defendant picking up an expandable police baton"). Of course, storming the Capitol and disarming law enforcement is not "typical" behavior and definitely not something that the California Legislature contemplated in 1917 when it passed the ban on billies/batons.

1322, 1327. That constitutes a class wide ban on arms no different than the class at issue in *Heller* which was handguns.

The State downplays its ban by claiming "Plaintiffs do not challenge this particular interpretation of section 22210, as they do not seek to possess such improvised billies." Answering Brief at 6, fn 1. While it is true that Plaintiffs wish to own policeman's batons, such as collapsible batons, their challenge cannot be evaluated in a vacuum. The *Heller* Court ruled on the total ban on handguns in Washington D.C. The *Heller* Court did not begin with the premise that Dick Heller wished to own a particular model of handgun and the burden of not being able to own that particular model of handgun had on him. Rather, the Court evaluated the overall statutory scheme that was before it and determined the level of burden based on a ban on all handguns.

The issue here is that California categorically bans a class of arms. That class is all club-like items which receive Second Amendment protection. California wishes to not count certain items as being protected by the Second Amendment (like a baseball bat) while arguing that the Second Amendment can be exercised using those items. This Court should reject that argument.

California also relies on *Teter v. Connors,* 460 F. Supp. 3d 989, 1001 (D. Haw. 2020), but *Teter* is distinguishable because it deals with a ban on butterfly knives, a *type* of knife, rather than a class-wide ban such as the one at issue here. A more

19

analogous example to the California law would be a ban on *all* knives. This Court should find that California law is no different than the class-wide ban at issue in *Heller* and find it "unconstitutional under any level of scrutiny." *Silvester v. Harris*, 843 F.3d at 821.However, if this Court is inclined to apply a level of scrutiny, then strict is the one it should choose.

### B. **Strict Scrutiny Should Apply**

At a bare minimum, strict scrutiny should apply to Plaintiffs' challenge and California's arguments to the contrary are unpersuasive. California claims that this Court's recent decision in *Duncan* supports an application of intermediate scrutiny to Plaintiffs' challenge. However, this Court's decision in *Duncan* is distinguishable from the matter at hand.  Unlike *Duncan*, the statutory scheme here destroys Plaintiffs' ability to use (or possess) the weapons at issue. As this Court held in *Duncan*:

> California's ban on large-capacity magazines imposes only a minimal burden on the exercise of the Second Amendment right. The law has no effect whatsoever on which firearms may be owned; as far as the challenged statute is concerned, anyone may own any firearm at all. Owners of firearms also may possess as many firearms, bullets, and magazines as they choose.

*Duncan v. Bonta*, No. 19-55376, 2021 U.S. App. LEXIS 35256, at *41-43 (9th Cir. Nov. 30, 2021).

Here, Plaintiffs may not "possess as many" batons as they would like, rather, Plaintiffs cannot own batons at all. This makes the *Duncan*'s reasoning inapposite

to Plaintiffs' challenge. The closest case in this circuit to Plaintiffs' challenge is *McDougall v. Cty. of Ventura.* That case involved a challenge to Ventura County's closure of gun stores during the Covid Pandemic. This Court found strict scrutiny appropriate to apply to that challenge.

First, it found that Ventura County's shutdown implicated the core of the Second Amendment right. "[T]he Orders implicate[d] the core of the Second Amendment right because they foreclosed the ability to acquire arms and ammunition and maintain proficiency in the use of firearms—rights which an en banc panel of this court has repeatedly acknowledged are necessary to the realization of the core right to possess a firearm for self-defense." *McDougall v. Cty. of Ventura*, No. 20-56220, 2022 U.S. App. LEXIS 1634, at *29 (9th Cir. Jan. 20, 2022) (cleaned up). It then found that Ventura County's closure of gun stores severely burdened the core right "by foreclosing altogether County residents' ability to acquire firearms or ammunition or maintain proficiency in their use at firing ranges." *Id* at *30. Here, the laws at issue directly implicate the core right of self-defense because they ban the possession of batons for self-defense and it severely burdens that right. Pursuant to *McDougall's* reasoning, strict scrutiny should apply.

California has made no argument that its ban survives strict scrutiny. It therefore concedes that the baton ban is unconstitutional if this Court applies strict scrutiny. That is because under strict scrutiny (as well as intermediate) the burden

is on the government to justify its restriction.[25] "Under that standard, the regulation is valid only if it is the least restrictive means available to further a compelling government interest." *Berger v. City of Seattle*, 569 F.3d 1029, 1050 (9th Cir. 2009) (en banc). In *McDougall*, this Court found that closing gun stores was not the least restrictive means available because it was a "*outright ban* of those activities altogether". *McDougall*, 2022 U.S. App. LEXIS at *36. This Court found "[a]mong other things, the County could have opened gun shops, ammunition shops, and firing ranges on an appointment-only basis." *Id.* at *37.

Similarly, California has opted to completely ban batons for private citizens to own. It could employ similar statutory schemes that it uses to regulate firearms. Perhaps it could require licensing, background checks, training, safe storage, or any other number of requirements. But instead, it does none of those things. Rather, it completely bans the ownership of batons. That is not the least restrictive means available.

The laws discriminatory impact on batons also highlights the fact it is not the least restrictive means available. In *McDougall,* this Court applied similar reasoning. "The Orders' discriminatory impact on gun and ammunition shops also emphasizes that they were *not* 'the least restrictive means available to further a

---

[25] *See Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981) ("The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest.").

compelling government interest.' *Berger*, 569 F.3d at 1050." *Id.* at *37. Here, California law discriminates against batons and other bludgeons but allows for the ownership of knives (including swords) and firearms. Just as "there is nothing in the record suggesting that gun shops, ammunition shops, or firing ranges posed a higher risk of spreading COVID than, say, bicycle shops or hardware stores" there is nothing in the record to show batons are deadlier than firearms. *Id.* at *38. If this Court applies strict scrutiny (which it should) then California's ban on batons fails because the State has put forth no argument to defend its law under that standard. And even if it had, California's ban would fail strict scrutiny for the reasons stated. When the State completely bans batons "it's one of those off-limits policy choices squarely contemplated by *Heller". Id* at *39. However, even if this Court applies intermediate scrutiny, the ban must still fail.

### C. <u>California's Baton Ban Fails Intermediate Scrutiny</u>

"To satisfy intermediate scrutiny, the government's statutory objective must be significant, substantial, or important, and there must be a reasonable fit between the challenged law and that objective." *Mai v. United States*, 952 F.3d 1106, 1115 (9th Cir. 2020) (citation and internal quotation marks omitted). "In considering whether [the challenged law] withstands intermediate scrutiny, we must first define the governmental interest served by [the challenged law], and determine whether it is substantial." *Jackson*, 746 F.3d at 968-69." *McDougall*, 2022 U.S. App. LEXIS at

*39-40. In *McDougall*, this Court found that the gun store closures failed intermediate scrutiny because the County did not establish a reasonable fit between the closures and public safety. "Appellees omit *any* evidence or argumentation suggesting that the closure of gun shops, ammunition shops, and firing ranges stems the spread of COVID any more than the closure of bike shops, hardware stores, and golfing ranges." *Id.* at *42.

Similarly, California has not produced any evidence suggesting that banning batons stems violence anymore than banning knives or firearms would. Plaintiffs are not suggesting that banning either of those arms would be constitutionally permissible, but are simply highlighting the fact that there cannot be a reasonable fit when California has made no showing that banning batons impacts public safety more than banning other constitutionally protected arms. "[T]hey also failed to provide any evidence that they considered less restrictive alternatives for the general public." *Id* at *42-43. "It's not as if alternatives were unavailable" *Id* at *43.

As mentioned above, California has put in place a system for the regulation of firearms which it believes is sufficient to curb illicit use of firearms. There is no reason why the same can't be done with batons. "If the government actually has any burden at all—which our court has repeatedly said it does, even under intermediate scrutiny—then at a minimum it means that the government must provide *some* explanation that pertains to the specific risks associated with the

24

fundamental right at issue. It did not do so here, and therefore failed to meet any burden in showing a reasonable fit." *Id* at *43-44. California's ban on batons fails intermediate scrutiny.

California claims its ban on possession is justified because "[d]ue to their concealability and striking power, billies and police batons are particularly susceptible to criminal misuse. *See Davis*, 214 Cal. App. 4th at 1331. Expandable batons are easily concealable, and can be smuggled into sensitive areas". Answering Brief at 57. The Wisconsin Court of Appeals already rejected similar reasoning in striking Wisconsin's ban on the possession of switchblades in the home under intermediate scrutiny as-applied to the litigant:

> The threat to the public of a surprise attack by a person possessing a switchblade in his or her own residence for the purpose of self-defense is negligible. Consequently, while banning possession of switch-blades in other settings might be substantially related to the State's cited objective of protecting the public from surprise attacks, prohibiting individuals from possessing switchblades in their own homes for their own protection is not.

*State v. Herrmann*, 2015 WI App 97, ¶13, 366 Wis. 2d 312, 321, 873 N.W.2d 257, 261.

This Court should adopt the Wisconsin court's reasoning. California's legal arguments, at best, may support restrictions on carry but do not support a ban on possession in the home. "As previously discussed, Defendant has offered virtually no evidence supporting a public safety rationale for a total ban (as opposed to lesser

restrictions)". *Maloney v. Singas*, 351 F. Supp. 3d 222, 239 (E.D.N.Y. 2018). "[A]s *Heller* and its progeny make clear, the fact that a class of arms entitled to Second Amendment protection *might* be dangerous in the wrong hands (e.g., handguns) does not necessarily justify their blanket ban in all settings." *Avitabile,* 368 F. Supp. 3d at 419.

### D. <u>This Court Should Be Guided by the Oregon and Connecticut Opinions</u>

California tries to downplay the wisdom of the Oregon and Connecticut Supreme Court decisions which struck baton bans. California first opines that the Connecticut reasoning is faulty because it used the wrong test to determine whether batons were protected by the Second Amendment. Answering Brief at 44. The test actually used to determine whether batons are protected is the same as the one proposed by California. The Court found "police batons are '[a]rms' within the meaning of the second amendment because they are weapons with traditional military utility that are typically possessed by law-abiding citizens for lawful purposes, and they are neither especially dangerous nor unusual." *State v. DeCiccio*, 315 Conn. 79, 129, 105 A.3d 165, 198 (2014). This is the same test endorsed by California. Answering Brief at 44. The Court merely used baton use by police as evidence of their typical use by private citizens.

California also claims "*DeCiccio* suffers from an additional error in that it relied on the militia use of police batons in determining that they are protected by

the Second Amendment." That is not what the Court did. Rather the Court found that batons use by law enforcement is evidence that batons, like handguns, are not so dangerous as to fall outside the protection of the Second Amendment. "[W]idespread acceptance of batons within the law enforcement community also supports the conclusion that they are not so dangerous or unusual as to fall outside the purview of the second amendment. To this end, the fact that police batons are inherently less lethal, and therefore less dangerous and less intrinsically harmful, than handguns, which clearly constitute 'arms' within the meaning of the second amendment, provides further reason to conclude that they are entitled to constitutional protection." *DeCiccio*, 315 Conn. at 133.

The reasoning of the Connecticut Supreme Court falls squarely in line with *Heller* and this Circuit's precedent. This Court should rely on it and find that California's baton ban is unconstitutional. The same applies to the reasoning of the Oregon Supreme Court. The arms protected by the Oregon Constitution mirrors those protected by the federal constitution. "When the constitutional drafters referred to an individual's 'right to bear arms,' the arms used by the militia and for personal protection were basically the same weapons…The term 'arms' in our constitution therefore would include weapons commonly used for either purpose, even if a particular weapon is unlikely to be used as a militia weapon." *State v. Kessler*, 289 Or. 359, 369, 614 P.2d 94, 99 (1980).

27

The Oregon Supreme Court used this reasoning to determine "[o]ur historical analysis of Article I, section 27, indicates that the drafters intended 'arms' to include the hand-carried weapons commonly used by individuals for personal defense. The club is an effective, hand-carried weapon which cannot logically be excluded from this term. We hold that the defendant's possession of a billy club in his home is protected by Article I, section 27, of the Oregon Constitution." *Kessler*, 289 Or. at 372. This is materially the same analysis that is to be employed when evaluating a claim under the federal constitution.

Contrary to California's arguments, both state supreme court cases are persuasive, and this Court should rely on them to find California's baton ban is unconstitutional. It should especially rely on the Connecticut Supreme Court case because to do otherwise would create a split of authority. California fails to identify the kind of "compelling reason" the Ninth Circuit normally demands before it is willing to "create a circuit split." *Padilla-Ramirez v. Bible*, 882 F.3d 826, 836 (9th Cir. 2017). The same reasoning should apply to the decision of a state supreme court. There is no compelling reason to depart from the sound reasoning of the Connecticut Supreme Court. Rather, this Court should follow the wisdom of the two state supreme courts referenced above and strike California's baton ban as unconstitutional.

## **CONCLUSION**

This Court should find California's ban on batons is unconstitutional.

Respectfully submitted,


*s/ Alan Alexander Beck*
ALAN ALEXANDER BECK
2692 Harcourt Drive
San Diego, California 92123
Telephone: (619) 905-9105
Email:
alan.alexander.beck@gmail.com

*s/ Stephen D. Stamboulieh*
STEPHEN D. STAMBOULIEH
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
Telephone: (601) 852-3440
Email: stephen@sdslaw.us

## **CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(f) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 6,957 words and complies with the word limit of Cir. R. 32-1.

2.       This brief complies with the typeface and type size requirements of Fed. R. App. P.32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

Dated: February 9, 2022.

*/s/ Alan Alexander Beck*
Alan Alexander Beck

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2022, I filed the foregoing Appellants' Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


*/s/ Alan Alexander Beck*
Alan Alexander Beck